## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 95-KA-00154-SCT

*ROBERT SANDERS*

*v.*

*STATE OF MISSISSIPPI*

**THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-A**

| | |
|---|---|
| DATE OF JUDGMENT: | 12/09/94 |
| TRIAL JUDGE: | HON. HARVEY S. BUCK |
| COURT FROM WHICH APPEALED: | WASHINGTON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JOHNNIE E. WALLS, JR. |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | FRANK CARLTON |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 9/18/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 10/9/97 |

**BEFORE PRATHER, P.J., ROBERTS AND MILLS, JJ.**

**MILLS, JUSTICE, FOR THE COURT:**

### STATEMENT OF THE CASE

Robert Sanders was indicted in the Circuit Court of Washington County for one count of conspiracy to commit armed robbery and one count of capital murder. After a trial, the jury found him guilty as charged under the first count and guilty of murder under the second count. The trial court sentenced Sanders to consecutive prison terms of five years for the conspiracy conviction and life for the murder conviction, after which the court denied his motion for j.n.o.v. or a new trial. Aggrieved, Sanders appeals to this Court, assigning as error the following issue.

### ISSUE

**WHETHER THE TRIAL COURT ERRED IN DENYING SANDERS' INSTRUCTION**

**ON THE LESSER INCLUDED OFFENSE OF MANSLAUGHTER.**

**FACTS**

Howard Joseph was the manager of C & C Pool Hall in Greenville, Mississippi. On the evening of March 6, 1994, Mr. Joseph was playing one of the pinball machines while three other men sat in the bar. Sometime between six and seven o'clock, two men wearing ski masks entered the pool hall and demanded money. When Mr. Joseph moved from the stool upon which he was sitting, the two masked men began firing their weapons, during which melee Mr. Joseph was shot and killed. The two assailants left without taking any money.

Based on information received later that night in an anonymous call to Crime Stoppers, police officers searched a home at 1003 East Starling Street, about a block from the pool hall, where they found a chrome-plated .380 caliber semi-automatic pistol. The officers also took three suspects into custody for questioning. The three suspects were Dennis Parker, Kelvin Sanders and Kelvin's brother, Robert Sanders.

When officer Darren Yates asked Robert about the incident at the pool hall, Robert stated that he was there, along with Kelvin Sanders and Dennis Parker. When asked about the weapons that were used, Robert stated that Dennis went in first with a .380 caliber pistol, and that Robert had a black .22 caliber assault rifle. With Robert's assistance, Officer Yates recovered a black Ruger .22 caliber assault rifle. In a typed statement later made to Washington County Deputy Sheriff Percy Miles, Robert stated that he, Dennis and Kelvin went to the pool hall, that Robert shot five times into the air, that Dennis went inside the pool hall first, that somebody inside started shooting, that Dennis then fired the .380 caliber pistol, and that they then ran away.

Robert Sanders, Kelvin Sanders and Dennis Parker were each charged in the Circuit Court of Washington County with one count of conspiracy to commit armed robbery and one count of capital murder. Dennis Parker pleaded guilty to conspiracy to commit armed robbery and manslaughter, and agreed to testify against Robert.

At Robert's trial, held from December 5 to 9, 1994, Dennis testified that on March 6, 1994, he encountered Kelvin and Robert Sanders standing on the corner of 3rd and Starling. He testified that Kelvin and Robert both had ski masks, that Robert had a gun, and that Kelvin asked Dennis if he wanted to rob somebody. According to Dennis, the three of them planned to enter the C & C Pool Hall, shoot one time in the air and tell everyone not to move. While Dennis and Robert held guns on the people, Kelvin was to collect the money. Dennis testified that he had a chrome .380 caliber automatic pistol and Robert had an AK .22 caliber assault rifle with a thirty-round clip. He testified that he was dressed in green shorts, a coat and a "yellowish-like" ski mask, and that Kelvin and Robert were dressed in all black with black ski masks.

According to Dennis, he and Robert entered the pool hall first, with Kelvin following behind. Robert said, "[T]his is a stickup," and started firing his gun, shooting four times into the air. Dennis testified that he shot one time into the air, at which point his gun jammed, and that Robert continued shooting. At that point, Dennis ran out with Kelvin running behind him. According to Dennis, they all three returned to Marcus Thomas' house at 1003 East Starling, where they changed clothes. They then returned to the pool hall where, as bystanders, they observed the police sealing off the crime scene.

Dennis testified that, while at the city jail after he was arrested, he received a note from Robert Sanders telling him that, because Dennis had a history of having seizures and because Robert had a baby, Dennis needed to tell the police that he did it and then plead insanity. Dennis gave the note to his attorney, who later gave it to the police. Two latent palm prints on the note proved to match that of Robert Sanders.

Charles Wilson was a patron in the pool hall when the incident occurred. Wilson testified that he was seated such that he could see anybody who walked in the door. According to Wilson, two men entered the pool hall, one dressed in all black and the other wearing a gold ski mask and holding a silver gun. Wilson did not see another gun. According to Wilson, the man wearing the gold ski mask was tall and very light skinned, matching the description of Dennis Parker. Wilson testified that the man in the gold ski mask said, "[G]ive me your money," and when Howard Joseph moved off the bar stool, the man in the gold ski mask started firing. Wilson did not see what the man dressed in black did, because when the shooting started, Wilson dove under a table.

Police Officer Robert Dismuke testified that upon arriving at the crime scene, he found one .380 caliber shell casing outside the doorway of the pool hall, two .22 caliber casings outside the doorway and seven .22 caliber casings inside the pool hall. Steven Hayne, a forensic pathologist called by the State, testified that Howard Joseph suffered three gunshot wounds, and that two bullets were recovered from his body. He testified that one bullet, recovered from Joseph's chest cavity, had passed through the heart and both lungs, and was the fatal shot. According to Hayne, the bullet was consistent with a .22 caliber. Steve Byrd, a forensic scientist specializing in firearms examination, testified that both bullets recovered from Howard Joseph's body were .22 caliber.

Robert Sanders took the stand and testified in his defense. He testified that on the night in question, he was walking down Starling Street when Dennis Parker approached him, told him to "hold up for a minute," and talked to Robert and his brother, Kelvin. According to Robert, they then went into the pool hall, whereupon Dennis fired the chrome weapon, dropped it and began firing another weapon. Robert testified that he had just happened to be walking by and that it was purely coincidence that he saw what happened. He denied telling Officer Yates that he had a gun at the pool hall and that he fired shots, he denied helping Officer Yates locate the .22 caliber assault rifle. He denied making the typed, signed statement taken by Deputy Miles, and he denied sending Dennis Parker a note asking him to confess to the murder.

During the conference on jury instructions, a discussion arose regarding whether a manslaughter instruction should be granted. The trial court denied the instruction as not supported by the evidence, to which denial the defense objected.

The jury found Robert Sanders guilty as charged under the first count, conspiracy to commit armed robbery, and found him guilty of murder under the second count. The trial court sentenced him to serve five years for conspiracy to commit armed robbery and to life imprisonment for murder, with the two sentences to run consecutively.

## DISCUSSION

### WHETHER THE TRIAL COURT ERRED IN DENYING SANDERS' INSTRUCTION ON THE LESSER INCLUDED OFFENSE OF MANSLAUGHTER.

Robert Sanders argues that the trial court erred in failing to grant a manslaughter instruction. He argues that taking the evidence in the light most favorable to the defense, a manslaughter instruction was warranted. This argument must fail.

Robert Sanders was charged under Miss. Code Ann. § 97-3-19 (1972) with capital murder done while in the commission of robbery, a crime explicitly excluded from the manslaughter statute. Miss. Code Ann. § 97-3-27 (Supp. 1996). Furthermore, Robert Sanders alleged no claim or defense, nor was there any evidence at trial, to support a manslaughter instruction. He maintained throughout his testimony that he did not have a gun, that he knew nothing of any planned robbery of the pool hall, that he did not participate in the attempted robbery, and that he just happened to walk by when the incident occurred. Taken in the light most favorable to the defendant, this evidence would indicate that he was innocent of *any* crime, which evidence still does not support a manslaughter instruction.

In the capital murder case of **Holland v. State**, 587 So. 2d 848, 871 (Miss. 1991), we found that even if the defendant's unsubstantiated theory of innocence were true, "[t]his evidence alone would not constitute evidence of the crime of manslaughter; rather, it would constitute evidence of innocence of *any* crime." (emphasis in original). We held that the evidence in the case could justify a conviction only of the principal charge of capital murder or of the lesser-included offense of murder, and thus the trial court properly deleted from the instructions the even lesser-included offense of manslaughter. **Holland**, 587 So. 2d at 870. Likewise, the Court holds that the trial court in the case *sub judice* did not err in refusing to grant a manslaughter instruction. This being Robert Sanders' only assignment of error, the Court affirms the circuit court judgment below.

**COUNT ONE: CONVICTION OF CONSPIRACY TO COMMIT ARMED ROBBERY AND SENTENCE OF FIVE (5) YEARS AFFIRMED. COUNT TWO: CONVICTION OF MURDER AND SENTENCE OF LIFE IN PRISON IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND PAYMENT OF $192.50 COURT COSTS AFFIRMED. SENTENCE IN COUNT TWO SHALL RUN CONSECUTIVELY WITH SENTENCE IN COUNT ONE.**

**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., BANKS, McRAE, ROBERTS AND SMITH, JJ., CONCUR. PITTMAN, J., NOT PARTICIPATING.**